## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CITIZENS INSURANCE COMPANY of
AMERICA, and HANOVER
INSURANCE COMPANY,

      Plaintiffs and Counter
      Defendants,

v.

THERMOFLEX WAUKEGAN, LLC,

      Defendant and Counter
      Plaintiff,

v.

GREGORY GATES

      Defendant.

No. 20-cv-05980

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Citizens Insurance Company of America and Hanover Insurance Company
(the "Insurers") sold Thermoflex insurance policies (the "Policies") that, among other
things, obligate the Insurers to defend and indemnify Thermoflex in suits arising out
of privacy violations. When Gregory Gates—an employee of Thermoflex—brought a

purported class action against Thermoflex in state court under the Illinois Biometric Information and Privacy Act (BIPA)—a law that protects against privacy violations—Thermoflex sought coverage under the Policies. After denying Thermoflex's request, the Insurers brought this suit, asking the Court to declare that they owe no duties to defend or indemnify Thermoflex in the Gates Lawsuit. (Dkt. 18.) Thermoflex brought counterclaims, seeking declarations as to the Insurers' duties to defend it and bringing breach-of-contract claims against each insurer for their failures to meet their obligations under the Policies. (Dkt. 19.) The parties filed separate motions for judgment on the pleadings as to all counts except Thermoflex's breach-of-contract claims. (Dkts. 23, 29.)

For the reasons that follow, Thermoflex's motion is granted, and the Insurers' motion is denied as to their duties to defend Thermoflex in the Gates Lawsuit. Under Illinois law (which governs the Court's interpretation of the Policies), any ambiguity in the Policies is resolved in favor of the insured; all that Thermoflex needs to establish the Insurers' duties to defend is to show that the Gates Lawsuit is "potentially or arguably" within the scope of coverage. Because the Policies "arguably" cover the BIPA claims in the Gates Lawsuit, and because none of the exceptions in the Policies unambiguously precludes coverage, the Insurers are obligated to defend Thermoflex. Judgment on the pleadings is granted as to Counts I and II of Thermoflex's amended counterclaims.

Separately, the Insurers' claims that they owe no duties to indemnify Thermoflex are not ripe because there has not been any determination of liability in the Gates Lawsuit. Accordingly, those claims are dismissed without prejudice.

## I.   BACKGROUND

Defendant Thermoflex is an automotive accessory development and production company. (Dkt. 18 ¶ 14.) Plaintiffs Citizens Insurance Company of America and Hanover Insurance Company (the "Insurers") issued insurance policies to Thermoflex; Citizens issued a Commercial Lines Policy, and Hanover issued a Commercial Follow Form Excess and Umbrella Liability Policy (together, the "Policies"). (Dkt. 18 ¶¶ 11-12.) Citizens's policy provides coverage for, among other things, "personal and advertising injur[ies]," which includes injuries "arising out of . . . [o]ral or written publication, in any matter, of material that violates a person's right of privacy." (Dkt. 19 at 27.) Hanover's policy provides coverage for "those sums in excess of the 'retained limit' . . . which the insured becomes legally obligated to pay as damages because of . . . 'personal injury' . . . to which this coverage applies." (*Id.*)

In 2017, Defendant Gregory Gates, on behalf of himself and others similarly situated, filed a class action against Thermoflex in the Circuit Court of Lake County, Illinois (the "Gates Lawsuit"). (*Id.* at 28; *see also* Dkt. 18-3 (state-court complaint).) The Gates Lawsuit includes three counts against Thermoflex under the Illinois Biometric Information Privacy Act (BIPA) based on Thermoflex's collection of its employees' handprint data, which Thermoflex allegedly used for authentication and

timekeeping purposes.[1] (Dkt. 18-3 ¶¶ 32-33, 66-96.) Thermoflex sought coverage from Citizens and Hanover—defense and indemnification—for the Gates Lawsuit. (Dkt. 18 ¶ 18). On September 29, 2020, the Insurers "decline[d] to provide coverage." (Dkt. 19-4 at 1.)

On October 7, the Insurers brought this suit against Thermoflex[2] (Dkt. 1), and, on November 16, they filed a second amended complaint (Dkt. 18). The Insurers allege that certain provisions of the Policies absolve them of their duties "to defend or indemnify Thermoflex in connection with the Gates Lawsuit." (*Id.* ¶¶ 26, 33, 40, 47, 55, 62, 68, 75.) On November 30, Thermoflex answered and asserted four counterclaims, asking the Court to declare the Insurers' duties to defend it (Counterclaims I and II) and asserting breach-of-contract claims against the Insurers based on their failure to defend Thermoflex in the ongoing Gates Lawsuit (Counterclaims III and IV). (Dkt. 19 at 31-35.) In January and February 2021, the Insurers and Thermoflex filed separate motions for judgment on the pleadings. (Dkts. 23, 29.)[3] The Insurers seek declarations that they have no duties to defend or

---

[1] BIPA prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining an individual's biometric identifier or biometric information absent informed, written consent. 740 ILCS 14/15(b). Regulated entities must inform individuals when their biometric identifier or biometric information is being collected or stored, along with the purpose and length of time for which it will be collected and stored. *Id.*

[2] The Insurers also sued Defendant Gates because, according to them, he is "a necessary party defendant." (Dkt. 18 ¶ 7.) It is true that, under Illinois law, underlying tort plaintiffs are sometimes necessary parties to insurance coverage disputes. *Great West Cas. Co. v. Mayorga*, 342 F.3d 816, 817 (7th Cir. 2003). Because Gates's status in the case is not implicated by the pending motions, the Court does not address that issue.

[3] Thermoflex filed its motion for judgment on the pleadings only as to counterclaims I and II. (Dkt. 29.) Accordingly, the Court does not address Thermoflex's breach-of-contract counterclaims (III and IV) in this opinion.

indemnify Thermoflex in connection with the Gates Lawsuit, as well as a declaration that they did not breach the Policies by declining to defend Thermoflex. (Dkt. 23 at 2.) Thermoflex seeks declarations that the Insurers have duties to defend it in the Gates Lawsuit. (Dkt. 29 at 2.)

## II.  STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings after both the plaintiff's complaint and the defendant's answer have been filed. Fed. R. Civ. P. 12(c). Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). As with a motion to dismiss, the court must construe the complaint's allegations liberally in favor of the insured. *Berg v. N.Y. Life Ins. Co.,* 831 F.3d 426, 429-30 (7th Cir. 2016). To succeed on a motion for judgment on the pleadings, the moving party "must demonstrate that there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). This standard is demanding and requires a showing "beyond doubt" that the nonmovant cannot prove any facts that support its claim for relief. *Id*.

## III.   DISCUSSION

### A.   The Insurers' Duties to Defend Thermoflex in the Gates Lawsuit

Under Illinois law,[4] an "insurer's duty to defend its insured is much broader than its duty to indemnify its insured." *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). If the complaint in the Gates Lawsuit "states a claim that is within, or even potentially or arguably within, the scope of coverage provided by the policy," the Insurers must provide a defense. *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1039 (7th Cir. 1992) (citing *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991)).[5]

Accordingly, for either insurer to have a duty to defend, Thermoflex need only point the Court to one provision that "potentially or arguably" extends its coverage to the lawsuit. *Pipefitters Welfare Educ. Fund*, 976 F.2d at 1039. In making that determination, the court should liberally construe both the insurance policies and the underlying complaint in favor of the insured and resolve "[a]ll doubts and

---

[4] The parties agree that Illinois law governs the Court's interpretation of the Policies. (*See* Dkt. 24 at 5; Dkt. 28 at 2 n.4.)

[5] Although not directly implicated here, this case raises complex questions of contract interpretation. It is ordinarily the case that ambiguity in a contract should be resolved by the trier of fact. *See Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1037 (7th Cir. 1998). Under normal circumstances, therefore, the Policies would require the Court to deny the present motions for judgment on the pleadings so that a jury could resolve the ambiguities. In the duty-to-defend context, however, the Court is bound by a different rule whereby ambiguity is resolved in favor of the insured. *U.S. Fid.*, 578 N.E. 2d at 930. Because the unsettled tension in the treatment of ambiguity under Illinois law is not squarely before the Court, and because Illinois law specifies how courts must treat ambiguities in insurance policies implicating insurers' duties to defend, the Court does not attempt to resolve those complex questions here.

ambiguities" in favor of the insured. *U.S. Fid. & Guar. Co.*, 578 N.E.2d at 930 (citations omitted).

Much of the Court's analysis turns on whether provisions of the Policies are ambiguous. An insurance provision "is ambiguous if it is subject to more than one reasonable interpretation." *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 719 (7th Cir. 2015) (citing *U.S. Fid. & Guar. Co.*, 578 N.E.2d at 930); *see* Ambiguity, Black's Law Dictionary (11th ed. 2019) (defining "Ambiguity" as "[d]oubtfulness or uncertainty of meaning or intention"). In making such a determination, the Court must assess "[t]he entire insurance contract, rather than an isolated part." *Ind. Ins. Co. v. Pana Cmty. Unit Sch. Dist. No. 8*, 314 F.3d 895, 903 (7th Cir. 2002). If a policy's words are *un*ambiguous, the "court must afford them their plain, ordinary, and popular meaning," and it "should not search for a nonexistent ambiguity." *Id.* at 902-03 (citations omitted).

Thermoflex asserts in Counterclaims I and II that the Policies obligate the Insurers to defend it in the Gates Lawsuit because that suit arises out of a "personal [or] advertising injury." (Dkt. 19 at 31-32.)[6] The Policies define "personal and advertising injur[ies]" to include "[o]ral or written publication[s], in any manner, of material that violates a person's right of privacy." (*Id.* at 27; Dkt. 18-1 at 203, 432; Dkt. 18-2 at 32-33.)[7] Thermoflex argues that, "by alleging BIPA violations, the Gates

---

[6] Citizens' policy provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." (Dkt. 18-1 at 194.)

[7] Page references to the policies are to the PDF page numbers.

complaint alleges [an] injury arising out of the publication of material that violates the privacy rights of the putative class, and the allegations of the complaint fall within, or at least potentially within, the coverage for personal injury afforded by the policies at issue." (Dkt. 29 ¶ 5 (citing *Pipefitters*, 976 F.2d at 1039).)[8] The Insurers apparently concede this point, arguing only that the Policies do not apply "*by reason of* the Employment-Related Practices Exclusion, the Recording and Distribution of Material or Information Exclusion, and the Access or Disclosure of Confidential or Personal Information Exclusion." (Dkt. 24 at 2 (emphasis added).)

As the Illinois Supreme Court has explained, BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1206 (Ill. 2019). Accordingly, the Gates Lawsuit, which alleges that Thermoflex violated BIPA, arises out of an alleged "personal [or] advertising injury." Unless an exception in the Policies unambiguously applies to preclude coverage, the Insurers must defend Thermoflex in the Gates Lawsuit. Each exclusion is addressed in turn below.

---

[8] In Count I, the Insurers assert that Citizens owes no duty to defend Thermoflex under a separate Cyber Liability Coverage provision in Citizens's Policy. That provision excludes coverage for "past events" "arising out of or in any way related to any 'Security Breach', 'Privacy Breach', 'Cyber Media Breach', investigation, proceeding, act, event, result, damage, transaction, decision, fact, circumstance or situation which occurred, in whole or in part, prior: 1. To the applicable Retroactive Date set forth in Item 4. of the Cyber Declarations; or 2. To the date an entity became a 'subsidiary'." (Dkt. 18 ¶ 20.) Thermoflex is not claiming coverage under the Cyber Liability Coverage Provision. (Dkt. 28 at 5 ("[T]he facts alleged in Gates do not trigger cyber liability coverage under the Policy, and Thermoflex does not claim such coverage.").) Because the parties agree that no coverage exists under the Cyber Liability Coverage provision in Citizens's Policy, Citizens owes no duty to defend under that provision.

*1. Employment-Related Practices Exclusions – Counts II and VII*

The Insurers first direct the Court to provisions in the Policies that exclude coverage for certain employment-related practices. Those provisions (the Employment-Related Practices exclusions) explain that claims for "personal and advertising injur[ies]" do not extend to "[e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person." (Dkt. 18 ¶¶ 28, 64.)

It is uncontested that the Gates Lawsuit arises out of Thermoflex's collection of its employees' handprints. (Dkt. 18-3 ¶ 32.) Collection of handprints (or, more generally, biometric information) is not expressly listed in the exclusions. But, as the Insurers note, "use of the phrase 'such as' in the Exclusion is illustrative and not intended to be exhaustive or limitative." (Dkt. 24 at 9.) The Insurers argue that the non-exhaustive list of employment-related practices extends to the conduct at issue in the Gates Lawsuit. (Dkt. 24 at 9.) Thermoflex argues, by contrast, that BIPA is "a statute of general application that does not regulate the employment relationship as such," and that "[t]he claims alleged in the underlying complaint are thus entirely different from—not 'of the same kind' as—the enumerated employment practices contained in the Employment[-Related Practices] Exclusion[s]." (Dkt. 28 at 8.)

The cases to which the Insurers direct the Court do not resolve this question. Although both *Health Care Indus. Liab. Ins. Program v. United States*, 548 F. Supp. 2d 632 (C.D. Ill. 2008) and *Jon Davler, Inc. v. Arch Ins. Co.*, 178 Cal. Rptr. 3d 502

(Cal. Ct. App. 2014) involved similarly-worded exclusions in insurance policies, neither case addressed the application of those exclusions to claims brought under BIPA. The court in *Health Care Indus. Liab. Ins. Program* addressed whether an employer's "faxing of [an employee's] resignation letter clearly related to . . . employment-related practices." 548 F. Supp. 2d at 646. And the court in *Jon Davler Inc.* held that a false imprisonment claim "share[d] general similitude with several of the matters specifically enumerated in the employment-related practices exclusion, such as coercion, discipline, and harassment." 178 Cal. Rptr. 3d at 509.

But it is unclear whether the conduct at issue in the Gates Lawsuit (collection of employees' handprints) is an employment-related practice like "coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution." (Dkt. 18 ¶¶ 28, 64.) Some of the listed examples (defamation, harassment, discrimination, and malicious prosecution) can be viewed as types of legal *claims*, while others (demotion, evaluation, reassignment, and humiliation) can be viewed as types of employer *conduct*. ("Coercion" may fall into either category, although the Court is unaware of any independent cause of action by that name.) Although the practice at issue in the Gates Lawsuit could be understood as a *claim*—such as a "privacy violation[]" (*e.g.*, Dkt. 24 at 9) or a "BIPA violation[]" (*e.g.*, Dkt. 28 at 8)—it could equally well be understood as employer *conduct*, such as "collection of biometric information" or "collection of handprints" (*see, e.g.*, Dkt. 18-3 ¶ 71). The mixture of examples in the Employment-Related Practices exclusions amplifies the ambiguity of the exclusions as applied in this case.

In a supplemental filing (Dkt. 47), Plaintiffs direct the Court to *American Family Mutual Insurance Co., S.I. v. Caramel, Inc.*, in which another judge in this District granted summary judgment to an insurer after interpreting a similar employment-related practices exclusion as barring coverage in the underlying BIPA suit. No. 20-cv-637, Dkt. 71 (Jan. 7, 2022, N.D. Ill.). *American Family* explained that "a BIPA violation is of the same nature as the exemplar employment-related practices listed in the Policy" because, like BIPA, "[e]ach of 'coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, [and] humiliation,' reflect a practice that can cause an individual harm to an employee." *Id.* at 10. But reading the exclusions as barring any employment-related practices that "can" cause harm to an employee would potentially preclude coverage for *any* claim against an employer. Such a result would be contrary to the rule that policy exclusions must "be read narrowly and . . . applied only where . . . clear, definite, and specific." *Gillen v. State Farm Mut. Auto. Ins. Co.*, 830 N.E.2d 575, 582 (Ill. 2005) (citation omitted); *cf. Woods v. Elgin, Joliet & E. Ry. Co.*, No. 96 C 6819, 2000 WL 45434, at *5 (N.D. Ill. Jan. 11, 2000) (finding "unreasonable" an interpretation of a contract exception that "would swallow the rule" and render another provision "meaningless"). Moreover, several of the listed employment-related practices—evaluation and reassignment—are not inevitably "harm[ful]" to employees such that coverage would be excluded. It is thus

not clear that the Employment-Related Practices exclusions at issue here ought to be viewed the same as in *American Family*.[9]

The claims in the Gates Lawsuit do not unambiguously share "general similitude with . . . the matters specifically enumerated in the employment-related practices exclusion." *Jon Davler, Inc.*, 178 Cal. Rptr. 3d at 509. Accordingly, the Employment-Related Practices exclusions do not absolve the Insurers of their obligations to defend Thermoflex in the Gates Lawsuit. *See Pipefitters Welfare Educ. Fund*, 976 F.2d at 1040 (noting that ambiguities must be resolved in favor of the insured).

### 2. Recording and Distribution Exclusions – Counts III and VIII

The Insurers also direct the Court to provisions of the Policies excluding coverage for "personal injuries" arising under certain laws:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**
"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or
(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

---

[9] Concluding that the exclusions are ambiguous in their application to the Gates Lawsuit, the Court declines to definitively construe the conduct at this juncture in the case.

(Dkt. 18 ¶ 35.)[10] The Insurers claim that, because the Gates Lawsuit alleges an injury under BIPA, the catch-all in the exclusions—paragraph (4)—bars coverage. (Dkt. 24 at 10-14.) Thermoflex argues that the exclusion should be construed narrowly, and it directs us to doctrines that mandate such a narrow interpretation. (Dkt. 28 at 8-11.)

The Illinois Supreme Court recently addressed insurance coverage under an exclusion very similar to that in the Policies. In *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, an insurer sought relief from its duty to defend in a state-court BIPA class action brought against the insured. – N.E.3d –, 2021 WL 2005464, at *1 (Ill. 2021). The *Krishna* court applied the doctrine of *ejusdem generis*—a "canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed," Ejusdem Generis, Black's Law Dictionary (11th ed. 2019)—to its interpretation of the insurance contract.[11] *See id.* at *9. In holding that the state-court BIPA suit was not excluded from coverage and thus that the insurer had a duty to defend, the court reasoned that, "since [BIPA] is not a statute of the same kind as

---

[10] There are minor differences in Hanover's policy (*see* Dkt. 18 ¶ 70) not relevant to the Court's analysis.

[11] Other state and federal courts have repeatedly endorsed the application of canons of construction including *ejusdem generis* to the interpretation of contracts. *See, e.g.*, *Bourke*, 159 F.3d at 1037 (explaining that courts can "consider[] the contract language in light of parol evidence and rules of construction" (quoting *Countryman v. Indus. Comm'n*, 686 N.E.2d 61, 64 (Ill. App. Ct. 1997))); *Alice F. v. Health Care Serv. Corp.*, 367 F. Supp. 3d 817, 825 (N.D. Ill. 2019) (explaining that "other relevant principles of contract interpretation" include "the doctrines of *ejusdem generis* and *noscitur a sociis*"); *Asta, L.L.C. v. Telezygology, Inc.*, 629 F. Supp. 2d 837, 844 (N.D. Ill. 2009) (describing *noscitur a sociis* as "a principle applicable to contract as well as statutory construction" (citing *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004))); *Z.R.L. Corp. v. Great Cent. Ins. Co.*, 510 N.E.2d 102, 104 (Ill. App. Ct. 1987) (applying *noscitur a sociis* rule to interpretation of insurance contract).

the TCPA and the CAN-SPAM Act and since [BIPA] does not regulate methods of communication [like those other statutes], the violation of statutes exclusion does not apply." *Id.* at *10.

The Insurers argue that *Krishna* is distinguishable and that this Court should interpret the exclusions in the Policies at issue in this case more broadly. First, the Insurers argue that the title of the exclusion in *Krishna*—"Violation of Statute That Govern E-Mails, Fax, Phone Calls or Other Method [of Sending Material or Information]"—differs from the title in the Policies—"Recording And Distribution Of Material Or Information In Violation Of Law"—and that the difference conveys a broader scope of the exclusions here. (Dkt. 24 at 12-14.) Second, the Insurers argue that the list in paragraph (4) of the exclusion—"addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information"—includes more terms than did the exclusion addressed in *Krishna*. (*Id.*) Finally, the Insurers note that the exclusion addressed in *Krishna* did not include the FCRA among the listed statutes to which the exclusion applies, and that the Policies' inclusion of that statute in this case conveys the broader scope of the exclusion here. (*Id.*)

The Insurers are correct that the differences between the Recording and Distribution Exclusion in the Policies and that addressed in *Krishna*, while slight on their face, broaden the scope of the exclusions in this case. Whether the added breadth extends to bar coverage here is less certain.

On its face, BIPA is not "of the same kind," *id.*, as the TCPA, the CAN-SPAM Act, or the FCRA.[12] The TCPA and CAN-SPAM "regulate methods of communication: the TCPA (telephone calls and faxes) and the CAN-SPAM (e-mails)," *id.*; the FCRA, meanwhile, "regulates the use of materials such as background reports," *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 695 (7th Cir. 2018). BIPA, by contrast, "regulate[s] the collection, use, storage, and retention of biometric identifiers and information." *Krishna*, 2021 WL 2005464, at *9. At best, it is unclear whether BIPA is sufficiently similar to those other statutes; at worst, as in *Krishna*, BIPA is different in kind. Because the exclusions "may be viewed as ambiguous," as in *Krishna*, the Policies "must be construed in favor of finding coverage" for Thermoflex. *Id.* at *10.

### 3. Access or Disclosure Exclusions – Counts IV and VI

Finally, the Insurers direct the Court to provisions of the Policies excluding certain types of claims from coverage:

> **Personal And Advertising Injury Liability:**
> 2. Exclusions
> This insurance does not apply to:
> **Access Or Disclosure Of Confidential Or Personal Information**
> "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

---

[12] The out-of-circuit cases to which the Insurers cite in support of extending the Recording and Distribution Exclusion are inapposite in part because none of those cases involved BIPA.

(Dkt. 18 ¶ 42.)[13] The Insurers argue that the Access or Disclosure exclusions bar coverage because the Gates Lawsuit "alleges that Thermoflex accessed and disclosed its employees' biometric information." (Dkt. 24 at 15.) Thermoflex, by contrast, argues that the exclusion "is not broad enough to include biometric identification information such as that protected by BIPA." (Dkt. 28 at 13.) Because "biometric information" (and, more narrowly, handprint information) is not listed in the exclusion, the question is whether that information falls within the catch-all for "*any other type* of nonpublic information." (Dkt. 18 ¶ 42 (emphasis added).)

Under the doctrine of *noscitur a sociis*, the catch-all should be interpreted "by the company it keeps." *Yates v. United States*, 574 U.S. 528, 543 (2015); *see* Noscitur a Sociis, Black's Law Dictionary (11th ed. 2019) (defining "*Noscitur a sociis*" as "[a] canon of construction holding that the meaning of an unclear word or phrase, esp[ecially] one in a list, should be determined by the words immediately surrounding it"). Accordingly, the "other type[s] of nonpublic information" (Dkt. 18 ¶ 42) excluded from coverage should be "given more precise content by the neighboring words with which [they are] associated." *United States v. Williams*, 553 U.S. 285, 294 (2008); *see Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 496 (7th Cir. 2012) ("Under the canon of *noscitur a sociis,* the fact that several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well." (cleaned up)).

---

[13] There are minor differences in Hanover's policy (*see* Dkt. 18 ¶ 58) not relevant to the Court's analysis.

The Access or Disclosure Exclusion targets various types of "confidential or personal information." All the listed examples are types of sensitive information traditionally kept private—whether for financial/proprietary reasons in the case of "patents, trade secrets, processing methods, customer lists, financial information, [and] credit card information," or for personal reasons in the case of "health information." (Dkt. 18 ¶ 42.)

Handprints do not "share [the] attribute[s]," *Ctr. for Individual Freedom*, 697 F.3d at 496 (quoting *Beecham v. United States*, 511 U.S. 368, 371 (1994)), of privacy or sensitivity. Indeed, BIPA expressly distinguishes between "biometric identifiers," and "confidential and sensitive information." 740 ILCS 14/10. The former category includes "scan[s] of hand or face geometry," and the latter category

> means personal information that can be used to uniquely identify an individual or an individual's account or property. Examples of confidential and sensitive information include, but are not limited to, a genetic marker, genetic testing information, a unique identifier number to locate an account or property, an account number, a PIN number, a pass code, a driver's license number, or a social security number.

*Id.* Although BIPA suggests that "biometric identifiers" may sometimes fall into the category of "confidential and sensitive information," *see, e.g.*, *id.* § 14/15(e)(2), it is noteworthy that none of the examples of biometric identifiers listed in the statutory definition are included in the definition of confidential and sensitive information, *see id.* § 14/10. The statutory text also makes clear that BIPA regards "[b]iometrics [as] *unlike* other unique identifiers that are used to access finances or other sensitive information." *Id.* § 14/5 (emphasis added).

In short, applying the *noscitur a sociis* canon to the Access or Disclosure Exclusions yields "more than one reasonable interpretation." *Panfil*, 799 F.3d at 719 (citing *U.S. Fid. & Guar. Co.*, 578 N.E.2d at 930). As with other exclusions at issue in this case, it is *at best* unclear whether BIPA treats handprints as "confidential and sensitive information." The Court resolves the Policies' ambiguity in favor of the insured. *See U.S. Fid. & Guar. Co.*, 578 N.E. 2d at 930.

*     *     *

The Insurers have not directed the Court to any exclusions in the Policies that unambiguously preclude coverage. As a matter of law, therefore, the Insurers have duties to defend Thermoflex in the Gates Lawsuit.

### B.     The Insurers' Duties to Indemnify Thermoflex

Whether the Insurers are entitled to a declaratory judgment that they have no duties to indemnify any potential state-court judgment against Thermoflex is less certain. In the Seventh Circuit, the "general rule" is that "a suit to determine an insurer's obligations to indemnify its insured is premature until the insured has been determined to be liable to somebody." *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 680 (7th Cir. 1992) (citing *Cunningham Bros., Inc. v. Bail,* 407 F.2d 1165, 1169 (7th Cir. 1969)). More precisely, the "duty to indemnify [is] unripe until the insured has been held liable." *Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995). In addition to the justiciability requirement under Article III of the Constitution, *see*, *e.g.*, *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019) ("Article III of the Constitution limits the jurisdiction of federal courts to cases

and controversies," (internal quotations omitted)), this conclusion also follows from the language of the Declaratory Judgment Act, which likewise requires the existence of an "actual controversy" before a court is authorized to declare any party's rights. *See* 28 U.S.C. § 2201(a). Even where an "actual controversy" exists, the Declaratory Judgment Act provides that the court "may"—not *must*—"declare the rights and other legal relations of any interested party seeking such declaration." *Id.*; *see Amling*, 943 F.3d at 379.

Because the issue of Thermoflex's liability in the Gates Lawsuit has not been decided, there is no "actual controversy" as to whether the Insurers must indemnify Thermoflex.[14] *See Century Sur. v. John B.*, No. 04 C 7997, 2006 WL 8461456, at *1 (N.D. Ill. Feb. 16, 2006) (collecting cases in which courts in this district have held that "a declaratory judgment action as to indemnification obligations is not ripe until liability in the underlying action has been established"). Put another way, the Insurers' obligations to indemnify Thermoflex are, at this point, speculative; they depend upon the vagaries of litigation. Indeed, as the Seventh Circuit explained in the context of construing an indemnification clause in a corporate transaction, a "declaration that A must indemnify B if X comes to pass has an advisory quality." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). That reasoning is instructive here, where, at most, the Insurers can say only that Thermoflex *might* be found liable in the underlying litigation.

---

[14] This is not so for the Insurers' duties to defend, which are in "controversy" to the extent that Thermoflex is seeking the Insurers' defense in the Gates Lawsuit. (*E.g.*, Dkt. 18 ¶ 18.)

Although the Seventh Circuit recognizes exceptions to the general rule that courts should not address premature inquiries about insurers' obligations, those exceptions are inapplicable here. In *Bankers Trust*, for example, the court emphasized that the probability of a judgment against the defendant is relevant to the question of standing under the Declaratory Judgment Act. 959 F.2d at 681. Where the probability of a judgment against the insurer is not "too slight," a court may assess the insurer's obligations to the insured because "Article III only requires a probabilistic injury." *Id.* Several other factors "supporting consideration of the request for a declaratory judgment . . . include[] the high amount of damages involved in the underlying claim, the insured's inability to pay that amount if found liable, and the likelihood that there was no other insurance coverage for the potential liability." *Ins. Co. of W. v. Cty. of McHenry*, No. 02 C 2291, 2002 WL 1803743, at *2 (N.D. Ill. Aug. 6, 2002) (citing *Bankers Trust*, 959 F.2d at 681-82).

At this stage, the Court is unable to assess the various factors relevant to whether an exception to the general rule exists. The Insurers allege no details about the strength of Gates's state-law claims, the extent of potential damages, or the existence of other insurance coverage to which Thermoflex can turn if found liable. As a result, the limited exception described in *Bankers Trust* ought not, without a firmer base of probability, displace in this instance the general rule that the "duty to indemnify is unripe until the insured has been held liable." *Grinnell Mut.*, 43 F.3d at 1154.

In addition to concerns about justiciability, the uncertainty whether Thermoflex will ever face a judgment of liability in the Gates Lawsuit is similarly relevant to the Court's decision as to how it should exercise its discretion under the Declaratory Judgment Act. Whether to issue a declaration under the Declaratory Judgment Act concerning the respective rights of litigants rests within a court's discretion. *See Amling*, 943 F.3d at 379. In view of the unresolved nature of the underlying state case, the Court would—even if the question of whether Insurers owe duties to indemnify Thermoflex were otherwise justiciable—nonetheless exercise its "unique and substantial discretion" and decline at this point to determine the Insurers' duties to indemnify Thermoflex. *Id.* (quoting *Haze v. Kubicek*, 880 F.3d 946, 951 (7th Cir. 2018)); *see also Lear Corp.*, 353 F.3d at 583 (even if no Article III barrier, issuing declaration of rights with an "advisory quality . . . could be a mistake, because it would consume judicial time in order to produce a decision that may turn out to be irrelevant").

## IV.    CONCLUSION

For these reasons, the Insurers' motion for judgment on the pleadings (Dkt. 23) is denied as to the Insurers' duties to defend (except Count I, because the parties agree that no coverage is owed under the Cyber Liability Coverage Provision in Citizens's Policy) and dismissed without prejudice as to the Insurers' duties to indemnify. Thermoflex's motion for judgment on the pleadings (Dkt. 29) is granted.

SO ORDERED in No. 20-cv-05980.

Date: March 1, 2022

_____

JOHN F. KNESS
United States District Judge